## PAYN *v.* GIDLEY.

CONTRACTS—HUSBAND AND WIFE—ESTOPPEL—REPLEVIN—DEMAND.
   Where a husband signed for his wife a contract whereby it was
   stipulated that a tenant of land purchased by the wife, of
   which she desired possession, should be allowed, if he vacated
   the premises, to re-enter and harvest wheat sowed by him, the
   wife to have a fourth of the crop so harvested, and she, after
   accepting rents paid under the contract, and taking possession
   pursuant to its terms, attempted to repudiate the authority of
   her husband to sign the contract, and denied the tenant's
   right to the wheat, and drew it into her own barns, the tenant
   was authorized in bringing replevin for the same without any
   previous demand.

Error to Grand Traverse; Corbett, J. Submitted
November 17, 1899. Decided January 23, 1900.

Replevin by George Payn and Julia Payn against
Howard E. Gidley and Ella M. Gidley. From a judg-
ment for plaintiffs, defendant Ella M. Gidley brings
error. Affirmed.

*C. G. Turner*, for appellant.

*Pratt & Davis*, for appellees.

MOORE, J. This is an action of replevin, brought to
obtain possession of a quantity of wheat. From a judg-
ment rendered in favor of the plaintiffs by the circuit
judge, before whom the case was tried, the defendant Ella
M. Gidley has brought the case here by writ of error.
The facts are simple. Mr. Payn and his wife were in
possession of a farm. Mrs. Payn had a lease of the farm,
and was the tenant of Mr. Gleason. Mr. Gleason made
an exchange of the farm for property the title to which
was in Mrs. Gidley, and deeded it to the defendants, sub-
ject to the rights of Mr. and Mrs. Payn. The Gidleys

afterwards wanted possession of the farm, and on the 30th of November, 1897, a written contract was drawn by which the Payns paid the rent by making a bill of sale of personal property, and arranged to surrender the possession of the premises subject to certain conditions, some of which were as follows:

"In further consideration of the premises, said Gidleys agree to allow said Payns to harvest, gather, and take off from said lands and premises all of the wheat and straw from the crop which they have put in thereon this fall, to be harvested during the season of 1898; said Gidleys agreeing to neither commit, suffer, nor allow any waste or damage thereto by their own stock or others, and to do what may be necessary to protect the same from such damage or waste, should any such protection become necessary during said time, in a husbandman-like manner. But said Payns agree to harvest, gather, and thresh such wheat crop in a good, husbandman-like manner, at the proper time and season, at their own expense, and, when so done, to deliver to said Gidleys, in the half bushel, one-fourth part of the wheat so gathered therefrom, when so threshed."

This contract was signed by Mr. and Mrs. Payn and by Mr. Gidley, who also signed it for his wife. The Payns moved off the farm, and the Gidleys moved upon it. In the following June, Mrs. Gidley undertook to repudiate, in a written notice to the plaintiffs, the authority of her husband to sign the contract, and denied that plaintiffs had any right to the wheat, and claimed to be the owner of it herself. She retained the rent which had been paid by reason of the contract, and the possession of the farm given her by virtue of it. When the wheat was ripe, Mr. Payn attempted to harvest it. Mrs. Gidley then filed a bill, and obtained an injunction restraining Mr. Payn from harvesting the wheat. The injunction was dissolved. Mrs. Gidley testified as follows as to what then occurred:

"After the injunction was dissolved, I had Mr. Gidley keep right on cutting the wheat. I guess he cut about 20 acres; I don't remember. Mr. Payn cut the rest.

Mr. Payn and Mr. Gidley together cut the whole. As soon as it was cut, we commenced hauling it into the barn. They drew in one load. We did that claiming we were entitled to all the wheat.

"Q. If the wheat hadn't been replevied from you, you would have hauled it all into the barn?

"A. Well, it had to be taken care of by some one. We claimed to own it, and intended to haul it all into the barn, and thresh it."

The wheat was then replevied, with the result already stated. It is the claim of Mrs. Gidley, through her counsel, that, as she was in the lawful possession of the wheat, replevin could not be brought until after a demand had been made upon her; counsel citing a great many cases. The trouble with the contention is that it has no facts to base it upon. Mr. Payn put in the wheat. He and his wife were in possession of the farm. They yielded possession of the farm by reason of the contract. Mrs. Gidley could not profit by the contract and at the same time repudiate it. By the terms of the contract, she was entitled to only one-fourth of the wheat, and was not entitled to that until after it was harvested and threshed. When it was threshed, it was delivered to her representative. Her assumed possession of the wheat was unlawful.

Judgment is affirmed.

The other Justices concurred.